## Harr, Secretary of Banking, Appellant, v. Mikalarias.

50

Argued September 29, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas A. Waggoner, Jr.,* with him *Linn V. Phillips, Horace M. Barba,* Special Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* with him *L. M. D'Auria,* for appellee.

OPINION BY MR. JUSTICE STERN, November 12, 1937:

By virtue of the authority given by the Act of June 15, 1923, P. L. 809, plaintiff, Secretary of Banking, took possession on July 1, 1930, of Title and Trust Company of Western Pennsylvania, Connellsville, Pennsylvania. The company was incorporated under the Act of April 29, 1874, P. L. 73. The par value of its capital stock was $100 per share, of which only $50 a share had been called and paid in. It appearing that the assets would be insufficient to pay in full the debts to depositors and other creditors, and that the entire amount remaining unpaid on the stock would be required for that purpose, plaintiff mailed to stockholders, including defendant, registered owner of 61 shares of the stock, a notice of call for payment "at once" of the entire balance due, which, in the case of defendant, amounted to $3,050. This notice was dated and sent on June 20, 1936. The present action in assumpsit was begun on June 29, 1936. Defendant filed an affidavit of defense setting up, as a question of law, plaintiff's failure to comply with section 723 of the Department of Banking Act of May 15, 1933, P. L. 565, which provides that in enforcing the personal liability of stockholders the notice from the secretary of banking of the assessment should designate a period within which payment should be made, "such period to be not less than *thirty* days after the date of the sending of the notice." The court gave judgment for defendant "without prejudice."

The contention of plaintiff, on his present appeal, is that section 723 applies to the enforcement only of the statutory or additional liability of stockholders and not to their obligation to pay the full par value of the stock.

The Banking Department Act of May 21, 1919, P. L. 209, section 35, empowered the commissioner of banking to sue for any assets or debts for which the corporation itself might sue, "or which any of the creditors might make available for the payment of their claims." Presumably this was aimed to cover, inter alia, suits for the

recovery of balances on the capital stock. On the other hand, section 37 of that act provided that whenever the stockholders were liable in double the amount of the value of the stock held by them, the commissioner might enforce their individual liability to such extent as might be necessary. Thus the Act of 1919 kept separate the two kinds of liability of stockholders in such cases,— the one for the balance due on the stock and the other for the added liability imposed by statute. The Banking Act of June 15, 1923, P. L. 809, which repealed the Act of 1919, maintained the same distinction and separation. It, also, in section 35, contained a provision applicable to the enforcement of the obligation as to unpaid subscriptions, and, in section 37, the enforcement of the statutory liability. In fact, the latter section was made even clearer in that regard by referring to the liability of which it treated as being "in addition to their liability as such stockholders for unpaid subscriptions."

When we turn to the present act, that of 1933, we find two significant changes tending to indicate that section 723 was designed to include both kinds of liability. The first such change is, that section 713, corresponding to section 35 in the Acts of 1919 and 1923, omits the paragraph containing the phrase "which any of the creditors might make available for the payment of their claims." The second is, that section 723 avoids the express limitation of the scope of section 37 of the former acts to the statutory liability of stockholders. It thus appears that instead of the two distinct provisions, one for the recovery of stock subscriptions and the other for the enforcement of statutory liability, section 723 was intended to replace and combine both sections of the former acts which dealt with these two forms of liability respectively.

An analysis of the language of section 723 leads to the same conclusion. It provides that "If at any time after he takes possession of a corporation as receiver, it shall appear to the secretary that the assets of such corpora-

tion will be insufficient to pay in full its debts to depositors and other creditors, he shall, as soon as expedient, estimate the amount which shall be assessed against all shareholders who are, under these circumstances, personally liable for any part of the debts of such corporation, by reason of their ownership of such shares. He shall assess against such shareholders the amount which he then deems necessary for the payment of such debts, not however exceeding the maximum liability of such shareholders, as provided by law."[1] Plaintiff argues that the words "under these circumstances" indicate that only statutory liability is referred to, because it is that liability which is contingent upon insolvency, whereas the liability of shareholders whose stock is not fully paid exists from the very beginning of the corporation. It is, however, only "under these circumstances" that such stockholders become personally

---

[1] Prior to recent legislation it was a procedural requirement that "in some mode there should be an ascertainment in some form of the fact of insolvency, of the exhaustion of all other assets, of the amount of the debts due by the corporation, of the amount of capital stock required for the discharge of the debts, and a call or assessment upon the stockholders for the payment of the amount necessary to be paid by each. . . . If . . . the corporation . . . is disabled . . . by its legal incapacity by reason of insolvency or bankruptcy, the assessment must be made by some court having jurisdiction of the matter and the parties, in some suitable proceeding by way of bill or petition": *Lane's Appeal*, 105 Pa. 49, 62, 63; *Bell's Appeal*, 115 Pa. 88, 92. These were cases involving unpaid subscriptions to stock; the same requirement existed in regard to the statutory liability of stockholders: *Craig's Appeal*, 92 Pa. 396, 400. An exception existed where *all* the unpaid subscriptions were required to pay the creditors. In that event it was not necessary for the court to ascertain the extent of the stockholders' liability and make an assessment before action for recovery could be commenced: *Citizens and Miners Savings Bank & Trust Co. v. Gillespie*, 115 Pa. 564; *Rattigan v. Findley*, 91 Pa. Super. Ct. 278. Under the Acts of 1919, 1923 and 1933 authority was given to the commissioner or secretary of banking to determine the need and amount of assessment, thus obviating the necessity of a preliminary judicial hearing and decree.

liable (to the extent of the amount remaining due on their stock) *for the debts* of the corporation; before insolvency they are liable only to the corporation itself. "So long as the corporation is solvent, the whole subscription is due in accordance with its terms and is payable when and as called for by the corporation. But when the corporation becomes insolvent, the contract between it and the subscriber is terminated and his debt to it then is only for such part of his subscription as is required to pay the corporate debts. It is a debt not to it in its own right but in the right of its creditors": *Swearingen v. Sewickley Dairy Co.*, 198 Pa. 68, 73; *Harrigan, Trustee, v. Bergdoll*, 281 Pa. 186, 189.

Plaintiff contends that the words "by reason of their ownership of such shares" indicate reference to statutory liability. But a person who becomes owner of stock takes it subject to the obligation for the unpaid portion of its par value, and thus such liability, just as the added statutory liability, arises through the acquisition of ownership.

Plaintiff also claims support for his argument in the phrase "not however exceeding the maximum liability of such shareholders, as provided by law," pointing out that the liability for unpaid subscriptions is contractual in its origin rather than "provided by law." But the purpose and the effect of this clause is only to limit the total assessment, including both forms of liability, whatever their nature or source, to the maximum that may, under the law, be recovered.

Several times it has been stated that the Department of Banking Act of 1933 presents a complete and comprehensive system for the liquidation of banking institutions: *No. 90 Building & Loan Association v. Allesandroni*, 317 Pa. 30, 32; *Royersford Trust Company's Case*, 318 Pa. 81, 83; *Stopp's Estate*, 122 Pa. Super. Ct. 47, 50. There would seem to be no reason why the framers of the 1933 Act should deliberately have omitted any procedural provision for the recovery of the unpaid

subscription liability of stockholders and for a minimal period of thirty days in which to pay the assessment, while making such provision in the case of the statutory liability of stockholders.[2]   Indeed, as far as the thirty days' time for the payment of unpaid balances of stock subscriptions is concerned, such a period is established by the Banking Code of May 15, 1933, P. L. 624, section 404, in the case of calls made by the board of directors while the institution is a going concern.   That section provides: "The board of directors shall cause notice of the amount of any call and of the time and place of payment, to be given at least thirty days before the call is due."   It is difficult to believe that the Department of Banking Act of 1933 did not intend to give to stockholders, in the case of such a call, the same minimum time after, as was thus given to them before, insolvency, and as was given by that act in connection with the enforcement of their statutory liability.

Whether, therefore, we consider the Act of 1933 historically, by comparing it with the legislation which it repealed and superseded, or analytically, by interpreting its phraseology, or from the standpoint of the advantages resulting from a judicial construction of the act that would make it comprehensive of all phases of the liquidation of insolvent banking institutions, we are led inevitably to the conclusion that section 723 covers liability of stockholders arising from unpaid subscriptions as well as their statutory liability, and therefore that defendant was entitled by its provisions to a minimum of thirty days in which to pay the assessment.   As the notice, contrary to the provision of the act, gave no such time, and the present suit was in fact started within ten days thereafter, the affidavit of defense was properly

---

[2] The statutory liability of stockholders of banking institutions was greatly curtailed by section 614 of the Banking Code of May 15, 1933, P. L. 624, as amended by the Act of April 24, 1935, P. L. 56, 68.

sustained. The action being prematurely brought was subject to abatement, and the entry of judgment "without prejudice" to plaintiff's right to bring a new suit— if not barred by the statute of limitations—was proper.

Plaintiff calls attention to section 13B of the Act of 1933, that "The provisions of this act shall not affect any . . . liability incurred, or right accrued, or any suit . . . to be instituted to enforce any right . . . under the authority of any act repealed or superseded by this act." This clause is not relevant here. The substantive right now sought to be enforced is not one derived from the Act of 1923, which was repealed by the Act of 1933, but from the original contractual obligation, which passed to successive transferees, to pay the par value of the stock. The procedural regulations governing the present action are determined by the Act of 1933, which was in force when the notice of assessment was given and the suit was instituted.

Judgment affirmed.