Freeman *v.* Culler, Appellant.

Argued April 12, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas E. Whitten,* with him *Paul Barnhart,* for appellant.

*Joseph J. Baer,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

Opinion by Mr. Justice Drew, May 21, 1945:

This action in assumpsit was brought by the Secretary of Banking of the Commonwealth, Receiver of the Farmers & Merchants Bank of West Newton, against appellant Carl H. Culler, the owner of twenty-six shares of its common stock, of a par value of $2600. The suit was brought to enforce the double liability imposed by the Act of May 13, 1876, P. L. 161 [7 P. S. 79], upon all shareholders in such banks. The trial court directed a verdict in favor of plaintiff in the full amount of the claim with interest, $3106.14. After motions for judgment n. o. v. and a new trial were refused by the court en banc and judgment entered on the verdict, this appeal was taken.

This bank was incorporated February 15, 1900, and rechartered on February 2, 1920, to exist for twenty years from February 15, 1920. It was a bank of discount and deposit. The Secretary took it over on October 15, 1931, and having elected to liquidate its assets, proceeded to do so; and on June 18, 1940, determined to enforce the double liability against shareholders to the extent of an one hundred percent assessment. Defendant having failed to pay the assessment made against him, this suit was entered.

The aggregate par value of the capital stock of the bank was $85,000. Its liability on June 18, 1940, the date of the assessment, was $166,393.16, and the appraised value of its assets $75,628.26; the deficiency being $90,-764.90, it was necessary to assess the stockholders the full amount of their liability.

The bank closed October 15, 1931; the Banking Code became effective July 3, 1933; the assessment to enforce the double liability was effective June 18, 1940; and this suit was brought February 17, 1942. The question raised on appeal is: Do the provisions of Section 614(B)* of

---

* "B. As to deposits in, and claims outstanding against, banks, bank and trust companies, or trust companies, upon the effective date

the Banking Code apply to a bank which was being liquidated by the Secretary of Banking prior to either the passage or the effective date of the Banking Code? We are bound to answer this question in the negative, as the learned court below did.

An analysis of Section 614(B) demonstrates that the section is not applicable to banks in liquidation. It plainly states as to deposits in, and claims outstanding against banks, upon the effective date of the Act, that the liability of common shareholders shall be "as heretofore provided by law" until terminated in accordance with the provisions of the section. At the effective date of the Act the liability of shareholders "as heretofore provided by law" was the liability imposed upon them by the Act of 1876, supra. There is no provision in this

of this act, the liability of common shareholders shall be as heretofore provided by law until terminated in accordance with the provisions of this section. As to any deposit made, or claim arising, after the effective date of this act, common shareholders now subject to statutory liability shall be liable to the extent of the percentage of the par value of their stock by which the unimpaired surplus of the bank, the bank and trust company, or the trust company falls short of one hundred per centum of its common capital. If, at the effective date of this act, the unimpaired surplus of any such bank, bank and trust company, or trust company is, or at any time thereafter becomes, equal to the aggregate par value of its common capital, the liability of common shareholders for deposits and other claims against such bank, bank and trust company, or trust company shall cease and determine. *The liability of common shareholders for deposits and other claims against such bank, bank and trust company, or trust company shall cease and determine on July 1, 1941, or on any later date fixed for such termination, if such bank, bank and trust company, on July 1, 1941, or on any later date fixed for such termination, exercises any of the powers conferred upon it by its articles of incorporation, provided that notice of such termination of liability shall have been given six months prior thereto, by advertisement in a manner similar to that prescribed by this act for the advertisement of intention to file articles of incorporation. Shareholders of banks, bank and trust companies, or trust companies, incorporated under this act, shall not be subject to any liability to the depositors or other creditors thereof.*" As amended June 24, 1939, P. L. 735, Section 1.

section for the termination of that liability by shareholders of a bank already in liquidation.

The provisions of the Code relate only to institutions that are doing business or that are to be organized in the future. It provided two funds for the safety of the depositors and abolished the double liability of the shareholders. Existing banks are required by the Code to maintain a surplus of at least one hundred percent and any bank whose surplus is not equal to one hundred percent of its capital on the effective date of the Code is compelled to build up its surplus until it is equal to the capital. [See Section 414]. If Section 414 is construed in conjunction with Section 614(B), it immediately becomes apparent that these sections are dealing with existing open banks and not banks that are being liquidated. A bank that is being liquidated cannot have net earnings and of course has no dividends or dividend periods.

The amendment of Section 614 in 1939 (P. L. 735), which abolished double liability on July 1, 1941, or any later date providing six months' notice of the termination thereof is given, limits such termination to banks exercising any of the powers conferred upon it by its articles of incorporation on July 1, 1941, or after that date. A bank that is in liquidation cannot exercise any of its powers secured by incorporation. The liability of the shareholders for an assessment was fixed on the date possession of the bank was taken by the Secretary. The amount that would be required, if any, and when that amount should be paid remained to be fixed by the Secretary, but nevertheless the liability imposed by the Act of 1876 became a claim at that time. Both the language of Section 614 and the legislative intent gathered from the entire Banking Code prohibits any construction of the Code that relieves shareholders of double liability in banks that are being liquidated at the effective date of the Code, July 3, 1933.

Defendant offered to prove from the records of the Receiver that the surplus of the bank after the effective date of the Code exceeded its capital. From the questions preceding the offer, it is apparent that he proposed to use the official appraised values of the unliquidated assets remaining at the effective date of the Code in arriving at the surplus. In the prior appeal in this case, 347 Pa. 253, at page 256, this Court disposed of this contention in this way: "Defendant's contention that the allegation of insolvency in the statement of claim is, on its face, at variance with the accounts filed by the Receiver is based upon a misconception. The values ascribed to the assets in the various accounts are mere appraisals, and, as the liquidation proceeds, gradually substituting actualities for opinions, a better picture of the situation can be obtained from time to time. The prices realized from the sales of assets may well show a shrinkage from the previously appraised values, especially because the periodical partial accounts do not contain revised appraisements but merely restate the original one. Moreover, the statute apparently intends that the Secretary, in determining the need for an assessment, should make an estimate of his own as to the likely liquidation value of the assets and not be bound by the official appraisement; presumably the values set forth in the statement of claim represent such an estimate."

Any successful attempt to arrive at the amount of the unimpaired capital and surplus of a partially liquidated bank by using the original appraised values would render meaningless the requirement of the Banking Code for an estimate of the remaining assets by the Secretary of Banking and the whole provision in the Code for the enforcement of double liability of shareholders.

Judgment affirmed, costs to be paid by appellant.